**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kip Daniels,<br><br>           Plaintiffs,<br><br>v.<br>Maximus Federal Services<br>           Defendant | No. CV-22-01702-SMB<br><br>**ORDER** |

      Before the Court is Defendant Maximus Federal Services Inc.'s ("Maximus") Motion for Summary Judgment ("MSJ"). (Doc 58.) Plaintiff Kip Daniels filed a Response (Doc. 66), and Defendant filed a Reply (Doc. 68). Defendant also filed a Separate Statement of Undisputed Material Facts in Support of the MSJ. (Doc. 59.) Plaintiff submitted a Controverting Statement of Facts and Separate Statement of Facts in response. (Doc. 67.) After consideration of the pleadings and the relevant law, the Court finds that oral argument is not necessary. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). For the reasons below, the Court will grant in part and deny in part Defendant's Motion.

**I.    BACKGROUND**

      This Motion pertains to a dispute underlying Plaintiff's employment with Defendant Maximus. (Doc. 59 at 3.) Maximus "contracts with government agencies to provide services to manage and administer government-sponsored programs and, at the time of Plaintiff's hire, was looking to develop Independent Medical Review (IMR) solutions for state workers' compensation programs." (*Id.* ¶ 1.) Maximus hired Plaintiff as its Vice

President of Sales and Capture in May 2019. (*Id.* ¶ 2.) He was hired on with an annual base salary of $200,000 and would be eligible for a two-component bonus structure comprised of (1) a short-term transition bonus schedule and (2) the "program." (*Id.* at 3 ¶ 3.) Program bonus payments would be between two and six percent of the Annual Contract Value ("ACV") which depended on the size of contract brought in. (*Id.* ¶ 5.) Bonus payments would be capped at three times an employee's base pay, meaning Plaintiff's were capped at $600,000. (*Id.*) However, if his commission earnings exceeded this cap, a manager was permitted to award a discretionary bonus to make additional commission payments. (*Id.*) Plaintiff's offer letter went on to provide that these bonus credits would be "tracked on a fiscal year basis but the payments may overlap with future year wins." (*Id.* at 4 ¶ 6; Doc. 59-2.) Any earned bonuses would be paid out in four equal installments: (1) on contract signing; (2) within ninety days of signing; (3) within 180 days of signing; and (4) within 270 days of signing. (Doc. 59 at 4 ¶ 8.) All of this is collectively known as the May 2019 Agreement. (*Id.* at 3–4.) Before beginning with Maximus, Plaintiff signed a second offer letter, the June 2019 Agreement, confirming his $200,000 starting salary and that his employment was "at-will" and "subject to its policies, programs, and practices as may be adopted or amended from time to time." (Doc. 59-11; Doc. 59 at 4 ¶ 11.) Plaintiff began work at Maximus in July 2019. (Doc. 59 at 4 ¶ 13.)

In March 2020, Maximus began contracting with government agencies to assist with issues related to the COVID-19 pandemic. (Doc. 59 at 5 ¶ 17.) Plaintiff began working in this capacity, with some duties including providing unemployment claims assistance in both North Carolina and Arkansas. (*Id.* ¶ 17.) Plaintiff also helped provide testing results and contact tracing efforts. (*Id.*) Plaintiff received six guaranteed bonuses from starting through Fiscal Year ("FY") 2020, as well as an alleged accidental bonus payment. (*Id.* ¶¶ 18–19.) Plaintiff alleges that Maximus owes him bonus payments for eleven other FY 2020 contracts. (*Id.* at 6 ¶ 20.) Plaintiff also alleges Maximus owes him bonus payments for nine FY 2021 contracts. (*Id.* at 7 ¶ 25.) Defendant alleges that Plaintiff was paid, even in excess, of the contracts he was bonus eligible for that year. (*Id.* at ¶¶ 26–27.) Plaintiff

also alleges Defendant owes him bonus payments for six contracts from FY 2022. (*Id.* at 8 ¶¶ 30–31.) Defendant asserts they paid Plaintiff for every FY 2022 contract he was bonus eligible for. (*Id.* at 9 ¶¶ 32–33.)

Halfway through FY 2021, Plaintiff emailed Maximus' Health Division President Tom Naughton about sales bonuses he believed Maximus owed him. (*Id.* at 9 ¶¶ 34–35.) These email conversations continued through June 2022. (*Id.* at 9–10.) Plaintiff, while still employed with Maximus, filed this action in September 2022 and continued to contact Maximus alleging unpaid commissions. (*Id.* at 10 ¶ 39–41.) In March 2023, Maximus, as part of "reduction in force," terminated Plaintiff's employment, and Plaintiff did not accept the offered severance. (*Id.* at 11 ¶¶ 44–45.) In June 2023, Plaintiff amended his Complaint to also allege wrongful termination. (*Id.* ¶¶ 46–47.)

Now Plaintiff brings claims for unpaid wages, breach of the implied covenant of good faith and fair dealing, and unlawful termination. (Doc. 31.) Before the Court is Defendant's Motion for Summary Judgement on each of these counts. (Doc. 58.) The Court will address the unpaid wages claim, the wrongful termination claim, and then the claim for breach of good faith and fair dealing in that order.

**II.    LEGAL STANDARD**

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of a case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. Additionally, the Court does not make credibility determinations or weigh the evidence. *Id.* at 253. The determination of whether a given factual dispute requires submission to a jury is guided by the substantive evidentiary standards that apply to the case. *Id.* at 255.

The burden initially falls with the movant to demonstrate the basis for a motion for summary judgment, and they must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If this initial burden is not met, the nonmovant does not need to produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has a burden to establish that there is a genuine issue of material fact. *Id.* at 1103. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586. Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 247–50 (citations omitted).

## III. DISCUSSION

### A. Unpaid Wages

Plaintiff first brings a claim for lost wages under the Arizona Fair Wages Act, Ariz. Rev. Stat. § 23-355. (Doc. 31 at 11.) Defendant moved for summary judgment on this claim. (Doc. 58 at 11.) For the reasons explained below the Court will grant in part and deny in part the Motion as to this claim.

Under the Arizona Fair Wages Act (the "Fair Wages Act") "if an employer . . . fails to pay wages due to an employee, the employee may recover in a civil action against an employer . . . an amount that is treble the amount of unpaid wages." Ariz. Rev. Stat. § 23-

355(A). Commissions are included under the Fair Wages Act. Ariz. Rev. Stat. § 23-350(7).

Here, Plaintiff alleges that after September 2020 Maximus failed to pay his commissions in accordance with the May 2019 Agreement, thereby violating the Arizona Wage Act. (Doc. 31 at 3, 11.) Plaintiff further alleges that despite the May Agreement's language, he was never paid a discretionary commission bonus while employed with Maximus. (*Id.* at 3 at ¶ 27.) Outside of not being paid a discretionary bonus while at Maximus, Plaintiff also alleges that for FY2021 he was only paid $200,000 in commission where under the three times salary cap, he should have been paid at least $600,000 as his earned commission would have been $607,734.74 based on the ACV of the contracts he worked on. (*Id.* at 4 ¶¶ 29–34.) Plaintiff lists out each individual contract and alleged earned commission in his FAC. (Doc. 31 at ¶¶ 35.) Plaintiff alleges Maximus wrongfully withhold earned commissions for FY2022 as well, where Plaintiff would have at least earned the capped $600,000 in commission and was only paid $210,510.50. (*Id.* at ¶¶ 36–40.) He lists out each individual contract and alleged earned commission from this fiscal year in his ACV as well. (*Id.* ¶ 41.)

Defendant alternatively argues that Maximus is entitled to summary judgment as to the unpaid wages claim because "the bonus cap provision is unambiguous" in that sales bonuses "are capped at 3X of base pay" and "are tracked on a fiscal year basis" even if "the payments may overlap with future year wins." (Doc. 58 at 12.) Defendant therefore argues that they are entitled to summary judgment on contracts where Maximus already paid Plaintiff up to the $600,000 cap that fiscal year. (Doc. 68 at 3.) Despite this, Plaintiff argues that because the Agreement also outlines an installment plan for these payments, which Defendant did not always follow, he is still owed installments on bonuses from FY 2019–2020 that bled over into the following fiscal year, FY 2020–2021. (Doc. 66 at 7.) This, however, would place him well over the $600,000 fiscal year cap. (*Id.*)

The Court will not construe one provision in a contract to render another provision meaningless. *Norman v. Recreation Centers of Sun City, Inc.*, 752 P.2d 514, 517 (Ariz. Ct.

App. 1988). However, that is what Plaintiff is asking the Court to do with these payments. This interpretation—strictly enforcing the installment provision—would read the agreed-to cap right out of the May 2019 Agreement. It is undisputed that for FY2019–2020 Plaintiff was correctly paid his commissions in two lump installments of $275,000 on August 9, 2020 and $325,000 on September 6, 2020. (Doc. 59 at ¶ 20.). This undisputedly reaches the $600,00 cap for the year. Accordingly, as to contracts for FY2019–FY2020 which reached the $600,000 cap, the Court will grant Defendant's motion for summary judgment on the Fair Wages Act claim.

However, there is a clear issue of fact surrounding FY 2021 and FY 2022, whereby Plaintiff alleges he is owed a minimum of approximately $400,000 commission for each year, because Defendant failed to even pay up to the bonus cap. (Doc. 31 at 3 ¶¶ 20; 32.) Defendant argues Plaintiff was either paid out for contracts arising under these years, or that the alleged unpaid commissions arise from bonus ineligible contracts. (Doc. 58 at 12.) Defendant alleges that in accordance with the May Agreement, Maximus changed the bonus program's provisions to compensate employees for bringing in new business, and accordingly made it so employees would not be paid commissions on sales opportunities unless they included "pre-marketing and client and partner interface and [was] not an opportunity that was identified upon RFP release." (*Id.* at 13.) Defendant also alleges COVID related sales were commission ineligible because "[t]he pandemic could not have been within the contemplation of the parties at the time Maximus hired Plaintiff." (*Id.*) Plaintiff alleges that he was never told that these kinds of contracts were commission ineligible. (Doc. 68 at 4–5.) In fact, Plaintiff alleges that he even was previously paid for RFP/RFQ contracts. (Doc. 66 at 4.) The Court agrees with Plaintiff that under the terms of the Agreement there is a factual dispute as to whether he was entitled to commission, up to the cap, for "large state and commercial agreements" and that there is nothing specifically in the Agreement precluding him from receiving commissions on these contracts. (*Id.* at 4.) Defendant's assertion that they can change the bonus structure at any time, and do not have to give notice of such change, does not alter this analysis.

Accordingly, because there is a factual dispute on whether Plaintiff was paid up to the $600,00 cap for these two fiscal years in accordance with the Agreement, the Court will deny Defendants motion for summary judgment on the Fair Wages Act claim as to FY 2021 and 2022.

**B. Unlawful Termination**

Plaintiff, in his amended Complaint, also brings a claim for wrongful termination under the Arizona Employment Protection Act ("AEPA"). (Doc. 31 at 12.) Defendant moved for summary judgement on this claim. (Doc. 58 at 14.) For the reasons explained below, the Court will grant the Motion as to this claim.

AEPA provides, in relevant part, that an employee has an actionable claim for wrongful termination where:

> (c) The employer has terminated the employment relationship of an employee in retaliation for any of the following:
>
> (i) The refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state.
>
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

Ariz. Rev. Stat. § 23-1501(A)(3)(c). To prevail, the plaintiff bears the burden of establishing either that the employer terminated his employment because he refused to violate Arizona law, or because he reasonably believed the employer violated Arizona law and reported it. *See Rowberry v. Wells Fargo Bank NA*, No. CV-14-01801-PHX-DLR, 2015 WL 7273136, at *4 (D. Ariz. Nov. 18, 2015).

Here, Plaintiff alleges that he was terminated not because of workforce reduction as alleged by Defendant, but rather because he reported that he was not being paid his

commission—a violation of Arizona wage laws. (Doc. 31 at 12.) Defendant, however, argues that Plaintiff cannot recover under the wrongful termination statute because the violations of § 23-355 and 350(7) that Plaintiff alleged have their own remedial scheme, making it unable to be a base statute on which to allege an AEPA violation. (Doc. 58 at 15.) This District has conflicting opinions on this point.

As Plaintiff notes, several decisions from this District, and Arizona state courts, have found that a plaintiff can bring an AEPA termination/retaliation claim premised on violations of wage laws. *See Secord v. Marketo Inc.*, No. CV-18-03142-PHX-GMS, 2020 WL 1033165, at *2 (D. Ariz. Mar. 3, 2020) (recognizing § 23-350 can be a base statute for an AEPA claim); *Medina v. Chas Roberts Air Conditioning, Inc.*, No. CV 05-4214-PHX-SMM, 2006 WL 2091665, at *2 (D. Ariz. July 24, 2006) (finding that plaintiffs there "stated a cognizable state law retaliation claim stemming from the filing of their Class Action complaint that [defendant] violated an Arizona wage statute.").

However, more recently courts in this District have been holding the opposite. In *Jett v. County of Maricopa*, No. CV-19-02735-PHX-DLR, 2022 WL 345004, at *3 (D. Ariz. Feb. 4, 2022) the court found that where an alleged violated law had its own remedial scheme, including the wage laws, a plaintiff could not lay out a prima facie case of retaliation under AEPA. *Id.* This Court also briefly addressed the issue when it granted summary judgment for an employer on an AEPA claim after finding plaintiffs recovering for unpaid wages are "granted no statutory right to pursue an action for remedies other than those provided by the Fair Wages Act." *Kuramoto v. Heart and Vascular Center of Arizona, PC*, No. CV-20-00113-PHX-SMB, 2021 WL 2012668, at *6 (D. Ariz. May 20, 2021). Judge Humetewa recently applied this reasoning and cited several other cases in *Guernsey v. Elko Wire Rope Inc.*, No. CV-21-00848-PHX-DJH, 2023 WL 5348567, at *3 (D. Ariz. Aug. 21, 2023). There, the court also held that the Fair Wages Act cannot be a base statute on which to allege retaliation under AEPA. *Id.* In *Guernsey*, the court walked through both a history of the AEPA and a discussion on why it was not persuaded by *Medina* in reaching its conclusion. *Id.* at *2–3. The Court continues to agree with this

interpretation of AEPA' exclusive remedies provision.  Accordingly, because Plaintiff's AEPA claim is based on a statute with its own remedies, the Court finds it is barred as a matter of law.  Therefore, the Court will grant Defendant's Motion as to Plaintiff's wrongful termination claim.

### C. Good Faith and Fair Dealing

Arising out of his claims for unpaid wages and wrongful termination, Plaintiff also brings a claim for breach of the covenant of good faith and fair dealing.  (Doc. 31 at 11.)  Defendant moved for summary judgment on this claim as well.  (Doc. 58 at 13.)  For the reasons explained below the Court will deny this Motion as to this claim.

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (cleaned up). "[I]mplied terms are as much of a contract as are the express terms." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002).  "The purpose of such terms is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'"  *Bike Fashion Corp.*, 46 P.3d at 434 (cleaned up).  Arizona law also recognizes that "a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Id.* at 435.

Plaintiff alleges that Defendant violated the covenant of good faith and fair dealing by failing to (1) pay earned commissions under the May Agreement; (2) failing to provide a proper accounting for refusing to pay, and; (3) by terminating Plaintiff to avoid paying earned commissions. (Doc. 31 at 11–12.)  Defendant, however, argues that Plaintiff cannot recover in tort in an employment case unless a public policy is violated—which Plaintiff has not demonstrated here.  (Doc. 58 at 13); *see Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 198 (Ariz. Ct. App. 1994).  The Court disagrees.

Defendant is correct that under Arizona law a Plaintiff may only have a cause of action in tort for breach of good faith and fair dealing where the alleged action is in violation of public policy. *See Gorney v. Arizona Bd. of Regents*, 43 F. Supp. 3d 946, 963 (D. Ariz. 2014), *aff'd*, 668 F. App'x 725 (9th Cir. 2016) (unpublished) ("[I]n Arizona, a tortious bad faith cause of action arising out of a breach of employment agreement, when no public policy is violated, is prohibited.") (cleaned up). This, however, is a slight red herring. As described above, even though Plaintiff does not have a cause of action under AEPA, Plaintiff *does* adequately allege Defendant violated the Fair Wages Act—a public policy of Arizona.

This said, even outside of alleging a violation of the Fair Wage Act, Plaintiff demonstrates a colorable issue of fact concerning how contracted for discretionary bonuses were calculated, and how, if at all, Maximus accounted for and investigated Plaintiff's voiced concerns around compensation. (Doc. 67 at 6 ¶¶ 33, 49); *see Kelly v. Skytel Commun.*, Inc., 32 F. App'x 283, 285 (9th Cir. 2002) (unpublished) ("[W]hen a contract confers on one party a discretionary power affecting the rights of another, the party with the discretionary power must exercise it in good faith and in accordance with fair dealing."). Every contract comes with an implied "right to receive the benefits of their contractual relationship." *See Wong v. White Rock Phlebotomy, LLC*, No. CV-23-00234-TUC-EJM, 2024 WL 897002, at *5 (D. Ariz. Feb. 13, 2024), *report and recommendation adopted*, No. CV-23-00234-TUC-EJM, 2024 WL 894709 (D. Ariz. Mar. 1, 2024). Here, Plaintiff has sufficiently shown an issue of fact as to whether Defendant honored this right. Accordingly, Defendant's Motion will be denied as to Plaintiff's claim for breach of the covenant of good faith and fair dealing.

## IV.   CONCLUSION

For the above reasons,

**IT IS ORDERED granting in part** and **denying in part** Defendant Maximus Federal Service's Motion for Summary Judgment (Doc. 51).

**IT IS FURTHER ORDERED granting** summary judgment in favor of Defendant

on Plaintiff's unpaid wages claim (Count I) related to fiscal years 2019 and 2020.

**IT IS FURTHER ORDERED denying** summary judgment in favor of Defendant on Plaintiff's unpaid wages claim (Count I) related to fiscal years 2021 and 2022.

**IT IS FURTHER ORDERED granting** summary judgment in favor of Defendant on Plaintiff's wrongful termination claim (Count III).

**IT IS FURTHER ORDERED denying** summary judgment on Plaintiff's claim for breach of the covenant of good faith and fair dealing (Count II).

Dated this 12th day of August, 2024.

*[signature]*
Honorable Susan M. Brnovich
United States District Judge